❏ Original        ❏ Du

CLERK'S OFFICE
A TRUE COPY
Sep 25, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A4. Abel THOMAS<br>(DOB: xx/xx/1993) | )<br>)<br>)<br>)<br>)<br>) |

Case No.  23-M-464 (SCD)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ___Eastern___ District of ___Wisconsin___
*(identify the person or describe the property to be searched and give its location)*:
See Attachment A4.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ___10-9-23___ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Hon. Stephen C. Dries___ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for ___ days *(not to exceed 30)*     ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:   9-25-23. 1:05 pm

*Judge's signature*

City and state:   Milwaukee, Wi

Honorable Stephen C. Dries, U. S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| **Certification** |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A4

## PERSON TO BE SEARCHED

The person to be searched is Abel THOMAS (DOB xx/xx/1993). Mr. THOMAS is a 29-year-old, black male with black hair and brown eyes. He is approximately 5'11" tall and weighs approximately 185 pounds.

1

# ATTACHMENT B

## THE ITEMS TO BE SEIZED

All records, information, and items relating to violations of 21 U.S.C. §§ Section 841(a)(1) (distribution and possession with intent to distribute a controlled substance) and 843(b) (use of a communication facility in furtherance of drug trafficking) between June 2023, to present including, but not limited to:

1. Controlled substances, including fentanyl, counterfeit pills, packaging materials, controlled substances paraphernalia, and other contraband related to drug trafficking and distribution.

2. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase, and distribution of controlled substances;

3. Paraphernalia and tools associated with drug trafficking, to include plastic bags, scales, duffel bags, and money counters;

4. Documents indicating travel in interstate and foreign commerce such as travel itineraries, papers, plane tickets, boarding passes, motel and hotel receipts, credit card receipts, telephone bills, schedules;

5. Books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier's checks, receipts, passbooks, bank checks, safe deposit box keys, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

6. Proceeds of drug trafficking activities, including United States Currency, precious metals, jewelry, financial instruments, including stocks and bond in amount indicative of the proceeds of illegal narcotics trafficking, expenditures of money and wealth, for example money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks, and check registers;

1

7. Photographs, in particular, photographs of co-conspirators, of assets, and/or controlled substances;

8. Address and/or telephone books, Rolodex indices and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers of co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exits;

9. Indicia of occupancy, residency, and/or ownership of the premises described above, including, but not limited to, utility and telephone bills, canceled envelopes, and keys;

10. Receipt for items evidencing the expenditure of the proceeds of drug distribution including, but not limited to, clothing, furniture, electronic equipment, and vehicles;

11. Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances; and

12. Cellular telephones and all electronic storage areas on the devices recovered from the Target Location, the Target Vehicles, and/or the person of Abel Thomas (other than those recovered devices that are clearly possessed and used exclusively by residents other than Abel THOMAS), including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/ or data.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing

2

or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

During the execution of the search of the locations or person described in Attachments A, law enforcement personnel are authorized (1) to press the fingers of Abel THOMAS to the fingerprint sensor ("Touch ID") and (2) to present the face of any Abel THOMAS to the facial recognition sensor, such as a camera, ("Face ID") of the device found at the Target Location for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

Note: The government will attempt to retrieve and copy all data from computers found at the location to be searched without physically removing said computers. If occupants of the premises are unwilling to cooperate with the agent(s) regarding the operation of an on-site computer system(s), and/or it appears that there is/are data security devices involved, or the computer system utilizes unusual or proprietary equipment, the computer system may be seized, along with the proprietary equipment. If the agent determines that the volume of material found on the premises is voluminous in size, and/or for any technical reason the agent(s) on the scene cannot search for or image/copy the information found on the premises, the computer system(s) and media may be seized.

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Sep 25, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

A4. Abel THOMAS
(DOB: xx/xx/1993)

)
)
)
)
)
)

Case No.  23-M-464 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A4.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 843 (b) | Distribution and possession with intent to distribute a controlled substances, and use of a communication facility in furtherance of drug trafficking. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

COLEMAN WILLIAMS
Digitally signed by COLEMAN WILLIAMS
Date: 2023.09.22 16:02:35 -05'00'

_____
*Applicant's signature*

Coleman Williams, DEA SA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 9-25-23

_____
*Judge's signature*

City and state:  Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**</u>

I, Coleman J. Williams, being first duly sworn, hereby depose and state as follows:

## I.     <u>BACKGROUND, TRAINING, AND EXPERIENCE</u>

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for warrants to search the following premises, vehicles, and person, further described in Attachments A1, A2, A3, and A4, (collectively, "Attachments A"), for the things described in Attachment B:

> **A1.**     **3438 North 57th Street, Milwaukee, Wisconsin** including its garage **(Target Location);**
>
> **A2.**     Black, 2018 Mazda 3, bearing Wisconsin license plate ANS7595, VIN: 3MZBN1V3XJM243166, registered to Natalya Jade Moreno, 319 E Wisconsin Ave Apt 5, Pewaukee, Wisconsin **(Target Vehicle 1);**
>
> **A3.**     Black, 2018 Chevrolet Equinox, bearing Wisconsin license plate 316XNC, VIN 2GNAXJEVJ6198303, registered to Johniece Nicole Gilliam, 5605 Castle CT # 104, Racine, Wisconsin **(Target Vehicle 2) (**A2, and A3, collectively **"Target Vehicles);** and
>
> **A4.**     The person of Abel THOMAS (DOB xx/xx/1993). Mr. THOMAS is a 29-year-old, black male with black hair and brown eyes.  He is approximately 5'11" tall and weighs approximately185 pounds.

2.      I have been employed as a Special Agent with the Drug Enforcement Administration ("DEA") since June 2020. I am currently assigned to the DEA Milwaukee District Office. As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking and money laundering offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963.  I have been involved in electronic surveillance methods, the debriefing of defendants, informants,

1

and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances. Prior to my employment with the Drug Enforcement Administration, I was employed as a Special Agent with the United State Secret Service for approximately 2 years and ten months.

3.     I have participated in complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses.  More specifically, my training and experience includes the following:

a.     I have utilized informants to investigate drug trafficking.  Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.     I have experience conducting street surveillance of individuals engaged in drug trafficking.  I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

c.     I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, fentanyl and methamphetamine.  I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale.  I know the street values of different quantities of the various controlled substances;

d.     I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

e.     I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

f.     I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

2

g. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking;

h. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials;

i. I know it is common for drug traffickers to maintain books, records, receipts, notes ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale, and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledger, etc., are maintained where the traffickers have ready access to them, including on electric devices; It is common practice for individuals who are involved in business activities of any nature to maintain books and records of such business activities for lengthy periods of time. It is also common practice for individuals who maintain these records to keep them in places that are secure but easily accessible such as in their businesses, offices, personal residence, or other locations over which they maintain dominion and control. It is also common that individuals who are attempting to conceal their true income from the IRS will maintain records that will establish their true ownership of assets or other expenditures in a secret manner. These records have included bank records, automobile titles, property deeds, cashier's check receipts, money order receipts, wire transfer receipts, documents pertaining to storage facilities or safe deposit boxes, documents or agreements detailing the true ownership of assets, photographs of the true owners with the concealed assets, or other items such as sales receipts, purchase orders, or shipping invoices;

j. I know drug traffickers often use electronic equipment such as telephones, pagers, computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

k. I know drug traffickers commonly maintain addresses or telephones numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization; and

l. I am familiar with computers, cellular telephones, pagers and their uses by drug traffickers to communicate with suppliers, customers, and fellow traffickers and by those engaged in money laundering activities to communicate with their associates and financial institutions; That drug traffickers use these devices to record their

3

transactions and aspects of their lifestyle related to drug dealing, whether in the form of voicemail, email, text messages, video and audio clips, floppy disks, hard disk drives, flash drives, CD's, DVD's, optical disks, Zip disks, flash memory cards, Smart media and any data contained within such computers or cellular telephones, electronic storage media and other settings particular to such devices; I know that such devices automatically record aspects of such communications, such as lists of calls and communications, and any particularized identification assigned to those source numbers or email addresses by the owner of the devices; Specifically, I know the following information can be retrieved to show evidence of use of the computer to further the drug trade and/or money laundering activities; Computer systems and cellular telephones, including but not limited to system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; and computer media and any data contained within such media and other material relating to computer systems and the internet including but not limited to, documentation, operating system software, application or access program disks, manuals, books, brochures, or notes; and computer access codes, user names, log files, configuration files, and passwords, screen names, email addresses, IP addresses and cellular / wireless telephones, SIM cards, any removable storage devices for telephones, and any data contained therein, including but not limited to stored telephone numbers, recently called numbers list, text message

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1) (distribution and possession with intent to distribute a controlled substance) and 843(b) (use of a communication facility in furtherance of drug trafficking) have been committed, are being committed, and will be committed by Abel THOMAS, and others not yet identified. Further, there is probable cause to search the locations described in Attachments A for evidence of these crimes, as described in Attachment B.

## II. LOCATION FOR WHICH A SEARCH WARRANT IS SOUGHT

4

6.      The **Target Location and Target Vehicles** listed below are located in the Eastern District of Wisconsin, and more particularly described in Attachments A.

a.   The residence at **3438 North 57th Street, Milwaukee, Wisconsin (Target Location)**.  This is described as a multifamily residence, with a gray brick exterior and light brown roof with a detached garage.  The numbers **"3438"** are posted to the right of the front door facing west. The detached garage is a one-car garage with white trim, a light brown roof, and a brown door that faces east and is located behind the residence. The entrance for the **Target Location** is located on the south side of the residence. There is a separate entrance for the other unit within this multifamily residence and that entrance is separately numbered.

b.   Black, 2018 Mazda 3, bearing Wisconsin license plate ANS7595, VIN: 3MZBN1V3XJM243166, registered to Natalya Jade Moreno, 319 E Wisconsin Ave Apt 5, Pewaukee, Wisconsin (**Target Vehicle 1)**; and

c.   Black, 2018 Chevrolet Equinox, bearing Wisconsin license plate 316XNC, VIN 2GNAXJEVJ6198303, registered to Johniece Nicole Gilliam, 5605 Castle CT # 104, Racine, Wisconsin (**Target Vehicle 2)**.

## III.   <u>PROBABLE CAUSE</u>

7.      Since June 2023, case agents have been investigating the drug trafficking activities of Abel THOMAS, and others in the Milwaukee, Wisconsin area relating to counterfeit M30 pills that are laced with fentanyl.  Based on information from a confidential source (hereafter CS-1), case agents identified Abel THOMAS as a fentanyl distributor in Milwaukee, Wisconsin.[1] CS-1 identified Abel THOMAS and stated Abel THOMAS utilized the nickname "Ace". CS-1 also provided a cellular telephone number for Abel THOMAS. CS-1 told case agents Abel THOMAS told him/her that Abel THOMAS was in possession of large quantities of counterfeit M30 pills to sell.

---

[1] Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

5

8.      On July 7, 2023, the DEA issued an administrative subpoena to AT&T, requesting subscriber information, telephone or instrument numbers, and local and long-distance telephone connection records for (414) 607-2802.  This is the telephone number that CS-1 provided to case agents and identified as the number that CS-1 contacts when arranging to purchase narcotics from "Ace."  T-Mobile responded that (414) 607-2802 subscribed to Abel A, THOMAS, with a user provided address of **3438 North 57th Street, Milwaukee, Wisconsin 53216 (Target Location)**, and that the number was active under that account from April 30, 2021 through the date the subpoena was served.  Case agents then obtained a Wisconsin Driver's License photo of Abel A THOMAS.  CS-1 positively identified this photo as the subject CS-1 knew to be "Ace."  During each of the controlled buys described below, CS-1 communicated with Abel THOMAS at (414) 607-2802.

9.      Case agents believe CS-1's information to be credible and reliable for the following reasons.  CS-1 has given case agents detailed and corroborated information concerning numerous individuals involved in drug trafficking, which case agents have independently verified; CS-1 has provided information against  CS-1's penal interest in that CS-1 has admitted his/her involvement in drug trafficking activities in the past; CS-1's information  is consistent with evidence obtained elsewhere in this investigation and portions of CS-1's information has been corroborated through phone records and independent law enforcement investigation. CS-1 is cooperating for monetary compensation and CS-1 has one prior felony conviction involving misappropriation of personal identification.

*A. Controlled Buys with THOMAS*

10.      CS-1 has conducted multiple controlled purchases of narcotics from Abel THOMAS.  Following each controlled purchase, CS-1 debriefed with case agents and explained

6

to them what occurred during each purchase. Case agents were able to corroborate these accounts by reviewing surreptitiously recorded video made by CS-1 during the transactions.

11. During this investigation, case agents made several controlled buys of counterfeit M30 pills (later determined to be laced with fentanyl) from Abel THOMAS. Based on my training and experience, a "controlled buy" is a law enforcement operation in which an informant, also known as a confidential source, purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When a confidential source is used, s/he is searched for contraband, weapons, and money before the operation. The confidential source is also wired with a concealed body recorder and/or a monitoring device. When the transaction is completed, the confidential source meets cases agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The confidential source is again searched for contraband, weapons, and money and then interviewed by the case agents about the drug transaction. A sample of the suspected drugs is then field tested by the case agents for the presence of controlled substances and then placed in inventory pursuant to normal inventory procedures. All of the calls to the target by the informants are consensually recorded calls under the direction and control of case agents and made in the presence of case agents. Additionally, case agents observe the informants dial the target's number on each occasion and the contact is verified through telephone records.

*a. First Controlled Drug Buy*

12. In early July 2023, CS-1 conducted a controlled buy of approximately 40 M30 pills from Abel THOMAS in the Milwaukee, Wisconsin area. After the controlled buy, CS-1 met with case agents. CS-1 advised that he/she purchased the M30 pills suspected to be laced with fentanyl from Abel THOMAS. CS-1 relinquished the drugs to case agents. After the controlled buy, Abel

7

THOMAS was observed by case agents returning in the area of **3438 North 57th Street, Milwaukee, Wisconsin (Target Location)**. Affiant reviewed the electronic recordings made by CS-1 during the controlled buy and confirmed that the purchase was made from THOMAS. On August 10, 2023, case agents received a chemical analysis report from the DEA North Central Laboratory regarding the purported M30 pills purchased during this controlled buy, and said report reflected that approximately at least 70% of the purported M30 pills submitted to the lab contained fentanyl.

    b. *Second Controlled Drug Buy*

13. In late July 2023, CS-1 conducted a controlled buy of approximately 200 M30 pills from Abel THOMAS in the Milwaukee, Wisconsin area. After the controlled buy, CS-1 met with case agents. CS-1 advised that he/she purchased the M30 pills suspected to be laced with fentanyl from Abel THOMAS. CS-1 relinquished the drugs to case agents. After the controlled buy, Abel THOMAS was observed by case agents returning in the alley way of **3438 N 57th Street, Milwaukee, Wisconsin**. Affiant reviewed the electronic recordings made by CS-1 during the controlled buy and confirmed that the purchase was made from THOMAS. On August 3, 2023, case agents received a chemical analysis report from the DEA North Central Laboratory regarding the purported M30 pills purchased during this controlled buy, and said report reflected that approximately at least 70% of the purported M30 pills submitted to the lab contained fentanyl.

    c. *Third Controlled Dug Buy*

14. On September 7, 2023, CS-1 conducted a controlled buy of approximately 200 M30 pills from Abel THOMAS in Milwaukee, Wisconsin area. Prior to the controlled buy, case agents established surveillance of THOMAS' residence at **3438 North 57 Street Milwaukee Wisconsin (Target Location)**. Case agents observed THOMAS arrive and park in front of the residence

operating **a black Chevy Equinox, displaying Wisconsin license plate 316XNC (Target Vehicle 2)**. A query with Wisconsin Department of Transportation revealed the vehicle is registered to Johniece Nicole Gilliam, believed to be THOMAS' girlfriend. A few minutes after THOMAS arrived, case agents observed THOMAS exit **Target Vehicle 2**, and walk to the side entry door on the south side of the residence of the **Target Location**. Case agents observed THOMAS approach and stop in front of the door, retrieve an item from his front pants pocket, believed to be keys. Case agents observed THOMAS open black metal security gate door, and then make a motion to opening the main door with keys, and then enter the **Target Location**. Just prior to the controlled purchase, case agents observed THOMAS exit the **Target Location** and appear to lock the door behind him, enter the **Target Vehicle 2** and drive away from the area.

15. Case agents followed THOMAS to the pre-determined met location where case agents observed THOMAS meet with CS-1 for a short period of time. After the controlled buy was completed, investigators followed THOMAS as he returned to **3438 North 57th Street, Milwaukee, Wisconsin (Target Location)** in **Target Vehicle 2**. Investigators observed THOMAS exit **Target Vehicle 2** and again approach the side entry door to the **Target Location**, appear to unlock the security door and enter the **Target Location**. After the controlled buy, CS-1 met with case agents. CS-1 advised that he/she purchased the M30 pills suspected to be laced with fentanyl from Abel THOMAS. CS-1 relinquished the drugs to case agents. Affiant reviewed the electronic recordings made by CS-1 during the controlled buy and confirmed that the purchase was made from THOMAS. On September 21, 2023, case agents received a chemical analysis report from the DEA North Central Laboratory regarding the purported M30 pills purchased during this controlled buy, and said report reflected that approximately at least 70% of the purported M30 pills submitted to the lab contained fentanyl.

9

16.     On July 25, 2023, and August 29, 2023, THOMAS traveled to Detroit. Based upon the timing of these trips and communication with CS-1, affiant believes these trips involved THOMAS picking up counterfeit M30 pills to sell to CS-1 during Controlled Buy #1 and Controlled Buy #2. During both trips, THOMAS was driving a black, 2018 Mazda 3 bearing Wisconsin license plate ANS7595 (**Target Vehicle 1**). During a text message exchange between THOMAS and CS-1 in July it was discussed that THOMAS travels to Detroit to meet his source when he wants to purchase counterfeit M30 pills. This was further confirmed via photos from IPASS of THOMAS in **Target Vehicle 1** on July 25, 2023, and again on August 29, 2023. On September 5, 2023, investigators conducting surveillance on THOMAS' residence observed THOMAS coming home from work in **Target Vehicle 1**. THOMAS was also observed in Detroit on September 12, 2023 by agents with DEA Detroit driving **Target Vehicle 1** during what affiant believes to be a personal trip to Michigan.

17.     During this investigations, CS-1 told investigators that he/she believes Abel THOMAS keeps the M30 pills in his residence located at 3438 North 57th Street, Milwaukee, Wisconsin (**Target Location**). Between July 7, 2023, and July 8, 2023, THOMAS and CS-1 exchanged text messages. THOMAS tells CS-1 that he found a consistent plug, aka source of supply, in Detroit. THOMAS tells CS-1 that he gets them by the 100. On July 11, 2023, THOMAS and CS-1 exchanged text messages setting up a time and place to meet for a drug transaction. On July 27, 2023, THOMAS and CS-1 exchanged multiple text messages regarding pricing and quantity of pills for a drug transaction that took place at the end of July. THOMAS sent CS-1 his location where the drug exchanged took place. Prior to controlled buy 3, the CS-1 placed an order for 400 pills from THOMAS, but ultimately only purchased 200 of the pills, leaving THOMAS holding the remaining 200 pills. Thereafter, THOMAS communicated with

10

CS-1 to arrange details for CS-1 to purchase the remaining pills. On September 18, 2023, THOMAS and CS-1 exchanged text messages. THOMAS inquired about when CS-1 was available for another 200 M30 pill drug transaction. On September 20, 2023, THOMAS texted CS-1 inquiring about the location of CS-1 to set up a time to conduct a drug transaction. All of the text communications detailed in this paragraph involved CS-1 communicating with THOMAS at telephone number (414) 607-2802.

18. As described above and in Attachment B, this application seeks permission to search for records that might be found on the **Target Location, Target Vehicles** and **THOMAS**, in whatever form they are found. One form in which the records might be found is data stored on a cellular telephone or computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

19. *Probable cause.* I submit that if a computer, cellular telephone, or electronic storage medium is found at the **Target Location, Target Vehicle,** and **THOMAS**, there is probable cause to believe records associated with the drug trafficking organizations' activities will be stored on the same, for at least the following reasons:

- Based on my knowledge, training, and experience, I know that this drug trafficker frequently uses cellular telephones and social media applications to communicate.
- I also know, based on my knowledge, training, and experience, that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in

11

the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

- Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

- Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

- Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

20.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how such electronic devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the **Target Location, Target Vehicle,** and on **THOMAS** because:

- Data on the computer, cellular telephone, or storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show

12

what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

- As explained herein, information stored within a computer, cellular telephone, and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating, or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of

13

computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

- A person with appropriate familiarity with how a cellular telephone or computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

- The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone or computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore,

14

contextual information necessary to understand other evidence also falls within the scope of the warrant.

- Further, in finding evidence of how a cellular telephone or computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

- I know that when an individual uses a cellular telephone or computer to operate a website that is used for illegal conduct, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The cellular telephone or computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone or computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a cellular telephone or computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

21. *Necessity of seizing or copying entire computers, cellular telephones, or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of cellular telephone or computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from

15

accidental or intentional destruction. This is true because of the following: (i) <u>The time required for an examination</u>. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site; (ii) <u>Technical requirements</u>. Cellular telephone and computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge; and (iii) <u>Variety of forms of electronic media</u>. Records sought under this warrant could be stored in a variety of storage media formats that may require off- site reviewing with specialized forensic tools.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying cellular telephones, computers, and storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but

not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

23. Through surveillance and information provided by CS-1, affiant is aware that at least one other person (believed to be THOMAS' mother) resides with THOMAS at the **Target Location**. Because multiple people share the **Target Location**, it is possible that the **Target Location** will contain cellular telephones, computers, or storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those devices, computers or storage media, unless it is clear that said devices, computers, or storage media are possessed and used exclusively by a resident other than Abel THOMAS, the warrant applied for would permit the seizure and review of those items as well.

24. *Unlocking Apple brand devices:* I know based on my training and experience, as well as from information found in publicly available materials including those published by Apple, that Apple devices are used by many people in the United States, and that some models of Apple devices such as iPhones and iPads offer their users the ability to unlock the device via the use of a fingerprint or thumbprint (collectively, "fingerprint") or facial recognition in lieu of a numeric or alphanumeric passcode or password. These features are called Touch ID and Face ID, respectively. If a user enables Touch ID on a given Apple device, he or she can register up to 5 fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) at the bottom center of the front of the device. In my training and experience, users of Apple devices that offer

17

Touch ID often enable it because it is considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user(s) of the device are engaged in criminal activities and thus have a heightened concern about securing the contents of the device. In some circumstances, a fingerprint cannot be used to unlock a device that has Touch ID enabled, and a passcode or password must be used instead. These circumstances include: (1) when more than 48 hours has passed since the last time the device was unlocked and (2) when the device has not been unlocked via Touch ID in 8 hours and the passcode or password has not been entered in the last 6 days. Thus, in the event law enforcement encounters a locked Apple device, the opportunity to unlock the device via Touch ID exists only for a short time. Touch ID also will not work to unlock the device if (1) the device has been turned off or restarted; (2) the device has received a remote lock command; and (3) five unsuccessful attempts to unlock the device via Touch ID are made. If Touch ID enabled Apple devices are found during a search of the **Target Location, Target Vehicles,** and on **THOMAS**, the passcode or password that would unlock such the devices are presently unknown to law enforcement. Thus, it will likely be necessary to press the finger(s) of the user(s) of any Apple device(s) found during the search of the **Target Location, Target Vehicles,** and on **THOMAS**, to the device's Touch ID sensor in an attempt to unlock the device for the purpose of executing the search authorized by this warrant. Attempting to unlock the relevant Apple device(s) via Touch ID with the use of the fingerprints of the user(s) is necessary because the government may not otherwise be able to access the data contained on those devices for the purpose of executing the search authorized by this warrant. In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training

18

and experience, that person may not be the only user of the device whose fingerprints are among those that will unlock the device via Touch ID, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require any occupant of the premises to press their finger(s) against the Touch ID sensor of the locked Apple device(s) found during the search of the **Target Location, Target Vehicles,** and on **THOMAS**, in order to attempt to identify the device's user(s) and unlock the device(s) via Touch ID. Although I do not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on my training and experience I know that it is common for a user to unlock a Touch ID-enabled Apple device via the fingerprints on thumbs or index fingers. In the event that law enforcement is unable to unlock the Apple device(s) found in the **Target Location, Target Vehicle,** and on **THOMAS**, as described above within the five attempts permitted by Touch ID, this will simply result in the device requiring the entry of a password or passcode before it can be unlocked. Due to the foregoing, I request that the Court authorize law enforcement to press **THOMAS**' fingers (including thumbs), to the Touch ID sensor of the Apple brand device(s), such as an iPhone or iPad, found at the **Target Location, Target Vehicle,** and on **THOMAS**, for the purpose of attempting to unlock the device via Touch ID in order to search the contents as authorized by this warrant.

## IV.    <u>CONCLUSION</u>

25.      Based on the forgoing, I believe there is probable cause to believe Abel

19

THOMAS (DOB: xx/xx/1993) and unknown individuals have and are committing violations of Title 21 United States Code Sections 841(a)(1) and 843.  I further believe that there is probable to believe that located at and in the **Target Location, Target Vehicles,** and on **THOMAS**, further described in Attachments A, there is evidence of these crimes, all of which is detailed more specifically in Attachment B, that a warrant issue authorizing the search of the same.

<u>**ATTACHMENT A1**</u>

**PLACE TO BE SEARCHED**

**3438 N 57ᵗʰ Street, Milwaukee, Wisconsin,** to include the garage, at this address. This property is utilized Abel THOMAS.  Described as a multifamily residence, with a gray brick exterior and light brown roof with a detached garage.  The numbers **"3438"** are posted to the right of the front door facing west. The detached garage is a one-car garage with white trim, a light brown roof, and a brown door that faces east and is located behind the residence. The entrance for the **Target Location** is located on the south side of the residence.  There is a separate entrance for the other unit within this multifamily residence and that entrance is separately numbered.



21

## ATTACHMENT A2

## PROPERTY TO BE SEARCHED

The black, 2018 Mazda 3, bearing Wisconsin license plate ANS7595, VIN:

3MZBN1V3XJM243166, registered to Natalya Jade Moreno, 319 E Wisconsin Ave Apt 5,

Pewaukee, Wisconsin.

22

**ATTACHMENT A3**

**PROPERTY TO BE SEARCHED**

The black, 2018 Chevrolet Equinox, bearing Wisconsin license plate 316XNC, VIN

2GNAXJEVJ6198303, registered to Johniece Nicole Gilliam, 5605 Castle CT # 104, Racine,

Wisconsin.

## ATTACHMENT A4

## PERSON TO BE SEARCHED

The person to be searched is Abel THOMAS (DOB xx/xx/1993).  Mr. THOMAS is a 29-year-old, black male with black hair and brown eyes.  He is approximately 5'11" tall and weighs approximately 185 pounds.

**THE ITEMS TO BE SEIZED**

All records, information, and items relating to violations of 21 U.S.C. §§ Section 841(a)(1) (distribution and possession with intent to distribute a controlled substance) and 843(b) (use of a communication facility in furtherance of drug trafficking) between June 2023, to present including, but not limited to:

1. Controlled substances, including fentanyl, counterfeit pills, packaging materials, controlled substances paraphernalia, and other contraband related to drug trafficking and distribution.

2. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase, and distribution of controlled substances;

3. Paraphernalia and tools associated with drug trafficking, to include plastic bags, scales, duffel bags, and money counters;

4. Documents indicating travel in interstate and foreign commerce such as travel itineraries, papers, plane tickets, boarding passes, motel and hotel receipts, credit card receipts, telephone bills, schedules;

5. Books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier's checks, receipts, passbooks, bank checks, safe deposit box keys, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

6. Proceeds of drug trafficking activities, including United States Currency, precious metals, jewelry, financial instruments, including stocks and bond in amount indicative of the proceeds of illegal narcotics trafficking, expenditures of money and wealth, for example money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks, and check registers;

7. Photographs, in particular, photographs of co-conspirators, of assets, and/or controlled substances;

8. Address and/or telephone books, Rolodex indices and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers of co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exits;

9. Indicia of occupancy, residency, and/or ownership of the premises described above, including, but not limited to, utility and telephone bills, canceled envelopes, and keys;

10. Receipt for items evidencing the expenditure of the proceeds of drug distribution including, but not limited to, clothing, furniture, electronic equipment, and vehicles;

11. Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances; and

12. Cellular telephones and all electronic storage areas on the devices recovered from the Target Location, the Target Vehicles, and/or the person of Abel Thomas (other than those recovered devices that are clearly possessed and used exclusively by residents other than Abel THOMAS), including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/ or data.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

26

During the execution of the search of the locations or person described in Attachments A, law enforcement personnel are authorized (1) to press the fingers of Abel THOMAS to the fingerprint sensor ("Touch ID") and (2) to present the face of any Abel THOMAS to the facial recognition sensor, such as a camera, ("Face ID") of the device found at the Target Location for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

Note: The government will attempt to retrieve and copy all data from computers found at the location to be searched without physically removing said computers. If occupants of the premises are unwilling to cooperate with the agent(s) regarding the operation of an on-site computer system(s), and/or it appears that there is/are data security devices involved, or the computer system utilizes unusual or proprietary equipment, the computer system may be seized, along with the proprietary equipment. If the agent determines that the volume of material found on the premises is voluminous in size, and/or for any technical reason the agent(s) on the scene cannot search for or image/copy the information found on the premises, the computer system(s) and media may be seized.